A11A1770, A11A1795. SHROPSHIRE v. ALOSTAR BANK OF
COMMERCE (two cases).
A11A1771, A11A1796, A11A2005, A11A2006. MILTON
ORGANIZERS, LLC et al. v. ALOSTAR BANK OF COMMERCE
(four cases).
A11A1772, A11A1797. KLESKO et al. v. ALOSTAR BANK OF
COMMERCE (two cases).

(724 SE2d 33)

MIKELL, Presiding Judge.

In these related cases, the maker and certain individual guarantors of two promissory notes appeal the trial court's orders granting summary judgment and final judgment in favor of lender Nexity Bank (the "Bank").[1] The two loans at issue were made in connection with appellants' efforts, ultimately unsuccessful, to form a new bank in Georgia. Because the underlying documents in these cases are the same, and because the appellants have raised some identical arguments, we have consolidated these cases for disposition. In Case Nos. A11A1770, A11A1771, A11A1795, and A11A1796, we affirm the trial court's grant of summary judgment to the Bank; in Case Nos. A11A2005 and A11A2006, we vacate the final judgment orders; and we remand these cases for further proceedings consistent with this opinion. In Case Nos. A11A1772 and A11A1797, we reverse the trial court's grant of summary judgment in favor of the Bank and against appellant Ryan Klesko, and remand for consideration of the pending jurisdictional issues; and we affirm the grant of summary judgment in favor of the Bank against appellant Richard Spear and remand for further proceedings consistent with this opinion.

On appeal from a trial court's grant of summary judgment, this Court conducts a de novo review of the evidence. On summary judgment, after the movant makes a prima facie showing of its entitlement to judgment as a matter of law, the burden then shifts to the respondent to come forward with rebuttal evidence. To do so, the respondent must set forth specific facts showing the existence of a genuine issue of disputed fact.[2]

Viewing the evidence in the light most favorable to the non-moving party, as we must,[3] the record reflects that the Bank made two loans to the borrower, Milton Organizers, LLC ("Milton LLC"):

---

[1] Nexity Bank was the predecessor in interest to appellee Alostar Bank of Commerce.

[2] (Citations omitted.) *Oasis Goodtime Emporium I v. Crossroads Consulting Group*, 255 Ga. App. 375, 376 (565 SE2d 573) (2002). See OCGA § 9-11-56 (e).

[3] *Lawyers Title Ins. Corp. v. Griffin*, 302 Ga. App. 726, 727 (691 SE2d 633) (2010).

one was evidenced by a Commercial Promissory Note (the "Note"), executed by Milton LLC on October 19, 2007; the other was evidenced by a Commercial Line of Credit Agreement and Note (the "LOC"), executed by Milton LLC on December 29, 2006. Payment of both loans was guaranteed by appellants George Shropshire, Joseph Lockwood, John Howell, Brent Baker, Orlando Wilson, Charles Shultz, Klesko, and Spear.[4]

The Note, in the principal amount of $2,100,000, contemplated payments of interest only until the maturity date, at which time the principal and any accrued and unpaid interest became due. Until the maturity date, the Note provided for a variable interest rate based on "Wall Street Journal Prime." After default, however, the Note provided for interest on the unpaid balance at 18% per annum. The maturity date, originally October 19, 2008, was eventually extended to December 31, 2009. On that date, appellants defaulted and failed to pay off the principal due under the Note ($2,099,996.20).

The LOC had an initial credit limit of $750,000; an interest rate of 6.750% per annum, to be adjusted daily based on "Wall Street Journal Prime"; and a maturity date of December 29, 2007. Like the Note, the LOC contemplated payments of interest only until the maturity date, when principal and any accrued and unpaid interest became due; and the interest rate after default was a flat 18% per annum. The Bank and Milton LLC later modified the LOC on several occasions, to increase the credit limit to $1,500,000; to adjust the pre-maturity interest rate; and to extend the maturity date, eventually, to December 31, 2009. On that date, the outstanding principal under the LOC was $1,480,000. Milton LLC and the guarantors failed to make this payment and defaulted on the LOC.

On April 15, 2010, the Bank filed two separate actions against appellants: one seeking recovery under the Note, and the other seeking recovery under the LOC. The Bank subsequently moved for summary judgment in both actions, first against Milton LLC and guarantors Shropshire, Lockwood, Howell, Baker, Wilson, and Shultz; and later against guarantors Klesko and Spear. In neither lawsuit did the defendants request a hearing on the Bank's summary judgment motions, and no hearing was held.

On March 17, 2011, in the Bank's action on the Note, the trial court granted summary judgment in favor of the Bank and against defendants Milton LLC, Shropshire, Lockwood, Howell, Baker, Wilson, and Shultz. On the same day, in the Bank's action on the LOC, the trial court entered an identical order granting summary judg-

---

[4] The other individuals who executed guaranties of the Note are not parties to the appeals in these cases.

ment to the Bank against the same defendants (these orders here-inafter sometimes collectively referred to as the "Milton Orders"). In a separate order entered in each lawsuit, the court granted summary judgment against defendants Klesko and Spear on the Note and on the LOC. In none of these orders, however, did the court set forth the dollar amounts owing and awarded to the Bank under the Note or the LOC. From these orders the defendants appeal.

After appellants filed notices of appeal as to the Milton Orders, the trial court entered a final judgment order in each action, in which the court set forth the amounts awarded to the Bank under the Note and the LOC, respectively. Appellants appeal from these orders as well.

### Case Nos. A11A2005 and A11A2006

1. In Case Nos. A11A2005 and A11A2006, appellants Milton LLC, Lockwood, Howell, Wilson, Shropshire, and Shultz appeal from the final judgment orders entered by the trial court.[5] Appellants contend, and appellee Bank concedes, that the trial court was without jurisdiction to enter these orders, because they were entered after notices of appeal as to the summary judgment orders had already been filed. We agree. "OCGA § 5-6-46 (a) provides that the filing of a notice of appeal serves as supersedeas when all costs in the trial court are paid. This automatic supersedeas deprives the trial court of jurisdiction to modify or alter the judgment in the case pending the appeal."[6] Accordingly, we vacate both final judgment orders entered by the trial court and remand for further proceedings consistent with this opinion.

### Case Nos. A11A1770, A11A1771, A11A1795, and A11A1796

2. In Case Nos. A11A1770, A11A1771, A11A1795, and A11A1796, borrower Milton LLC and guarantors Shropshire, Lockwood, Howell, Baker, Wilson, and Shultz appeal the Milton Orders, in which the trial court granted summary judgment to the Bank on the Note and the LOC. We first address appellants' contention that the trial court erred in considering the amended affidavits filed by the Bank in support of its motion for summary judgment. We find no error.

In support of its motions for summary judgment, the Bank

---

[5] In Case Nos. A11A1770, A11A1771, A11A1795, and A11A1796, appellants challenge the entry of the final judgment orders in their third enumeration of error, on the same grounds.

[6] (Citations and punctuation omitted.) *In re Estate of Zeigler*, 259 Ga. App. 807, 808 (1) (578 SE2d 519) (2003). Accord *Lawyers Title Ins. Corp.*, supra at 729 (1).

submitted the affidavits of its employee Joseph Sugg. The affidavits were filed on July 26, 2010, contemporaneously with the filing of the Bank's summary judgment motions; and in each affidavit, Sugg referred to an attached Exhibit A, a ledger recording the payment history of the loan at issue. Subsequently, on September 3, 2010, the Bank filed summary judgment reply briefs in each lawsuit, attaching to each an amended Sugg affidavit. In the action on the Note, the Bank explained that the wrong Exhibit A had been attached to Sugg's original affidavit; and that, in order to correct this clerical error, Sugg's amended affidavit had been filed with the correct exhibit attached. In the action on the LOC, the Bank explained that the amended Sugg affidavit was filed in answer to appellants' response to the Bank's summary judgment motion; and that the amended affidavit contained updated information as to principal payments on the Note made by other guarantors (who are not parties to these appeals).

Defendants moved to strike the amended affidavits in both lawsuits on September 16, 2010; and on September 21, 2010, the Bank moved for leave of court to consider the amended affidavit in both lawsuits. The trial court did not rule on any of these motions.

(a) Appellants assert that the trial court erred in not granting their motions to strike Sugg's amended affidavits from the record, on the ground that these amended affidavits were not filed contemporaneously with the Bank's motions for summary judgment in each action.[7] However, the trial court failed to rule on appellants' motions to strike, nor did appellants seek a ruling in either lawsuit. "It is the duty of a litigant to obtain a ruling on his motions or objections."[8] Appellants' failure to obtain rulings on their motions to strike Sugg's amended affidavits resulted in a waiver of appellate review of that issue.[9]

Even had this issue not been waived, however, it is without merit. Appellants cite OCGA § 9-11-56 (c), which provides that motions for summary judgment "shall be served at least 30 days before the time fixed for the hearing." We note that in both the underlying lawsuits, no hearing was requested or held. Thus, the 30-day period never applied in these cases. Appellants also rely on OCGA § 9-11-6 (d), which provides that "[w]hen a motion is supported by affidavit, the affidavit shall be served with the motion." As this Court has explained, the purpose of this contemporaneous filing requirement "is to ensure that the other side has adequate

---

[7] See OCGA §§ 9-11-6 (b), (d); 9-11-56 (c).

[8] (Punctuation and footnote omitted.) *Leone v. Green Tree Servicing*, 311 Ga. App. 702, 705 (3) (716 SE2d 720) (2011).

[9] See id. (no ruling on motion to strike affidavit waived appellate review).

notice of and opportunity to respond to such evidence."[10] The Bank submitted Sugg's amended affidavits more than six months before the entry of the orders granting summary judgment, thus obviating any surprise to appellants.[11] "Moreover, the requirement of simultaneous filing [found] in OCGA § 9-11-6 (d) is not absolute, and the trial court is authorized to extend the period for filing the movant's affidavits."[12] In this case, it is apparent that the trial court so extended the time for filing the amended affidavits, as both Milton Orders recite that the court considered the pleadings, evidence, and all other materials in the record in each case. Because the amended affidavits were filed far in advance of the trial court's summary judgment rulings, and because the Bank explained its reasons for filing the amended affidavits, and "because, in the absence of evidence in the record to the contrary, we must presume the trial court acted correctly,"[13] we decline to find that the trial court acted improperly in considering the amended affidavits.

(b) Appellants contend that Sugg's amended affidavits fail to show any basis for the loan instruments' variable interest based on Wall Street Prime Rate. Contrary to appellants' contention, however, the amended Sugg affidavits are sufficient to support the Bank's allegations as to the interest charges on the loans.

It is true that, absent evidence to establish the variable interest rate, defined in the debt instrument as a fixed percentage above a particular prime rate, summary judgment for the lender would be improper in the face of the debtor's denial of the interest amount sought.[14] As to the Note, however, the Note loan payment history attached to Sugg's amended affidavit showed that the interest on that loan was paid through the date of default; and the Bank did not seek to recover any pre-default interest, but only post-default interest at the flat 18% default interest rate. As to the LOC, to the extent the Bank sought pre-default interest, the LOC loan payment history attached to Sugg's amended affidavit set forth the specific

---

[10] (Citation and punctuation omitted.) *Alcatraz Media v. Yahoo! Inc.*, 290 Ga. App. 882, 884-885 (1) (b) (660 SE2d 797) (2008).

[11] See id. at 885 (1) (b); *Riberglass, Inc. v. ECO Chemical Specialties*, 194 Ga. App. 417, 419 (1) (a) (390 SE2d 616) (1990).

[12] (Citation omitted.) *Riberglass*, supra. Accord *Alcatraz*, supra. See OCGA § 9-11-6 (b) (providing for an extension of time for filing by order of court).

[13] (Citation omitted.) *Riberglass*, supra.

[14] See *Garrett v. Atlantic Bank &c. Co.*, 157 Ga. App. 103-104 (1) (276 SE2d 152) (1981) (fact issue remained where bank failed to introduce any evidence to establish interest rate based on bank's prime rate, and debtor denied liability), citing *Moore v. Wachovia Mtg. Co.*, 138 Ga. App. 646, 647 (1) (226 SE2d 812) (1976) (where bank offered no evidence by way of stipulation, deposition, or admission to establish variable interest rate based on bank's prime rate during life of note, summary judgment was improper in the face of debtor's denial of interest due).

variable interest rates charged over time, from the LOC's inception through its maturity date.[15] As this Court has held, "a bank employee's uncontested affidavit setting forth the amount of interest that had accrued authorized an award of interest as a matter of law, where, as here, the defendant never came forward with contrary evidence."[16] Appellants have not come forward with contrary evidence in this case. Further, Sugg's amended affidavits in both lawsuits, attesting to a post-default interest rate of 18% per annum, provided a sufficient basis for computing the interest rate from the date through which interest is calculated in the affidavit (August 31, 2010) to the date that judgment is entered.[17]

3. Appellants contend that the trial court erred in granting summary judgment to the Bank because the evidence submitted by the Bank was insufficient to prove the amounts owed under the Note or under the LOC. However, the trial court ruled for the Bank in each of the challenged summary judgment orders on the issue of liability only. As to liability, "[a] plaintiff seeking to enforce a promissory note establishes a prima facie case by producing the note and showing that it was executed. Once that prima facie case has been made, the plaintiff is entitled to judgment as a matter of law unless the defendant can establish a defense."[18] It is undisputed that Milton LLC executed the Note and the LOC; that the appellant guarantors executed the guaranty agreements as to both the Note and the LOC; and that Milton LLC defaulted under the Note and the LOC. Thus, the Bank established a prima facie right to recover against appellants on both of the loan instruments at issue. Moreover, appellants have failed to raise a defense. Their argument goes to the issue of the *amount* of money owed, not to liability vel non.

Therefore, we affirm the trial court's orders granting summary judgment in favor of the Bank and against appellants Milton LLC, Shropshire, Lockwood, Howell, Baker, Wilson, and Shultz; and we remand for further proceedings proving the damages to be awarded to the Bank and entering judgment in a sum certain.

### Case Nos. A11A1772 and A11A1797

4. In Case Nos. A11A1772 and A11A1797, appellant Klesko raised the affirmative defense of lack of personal jurisdiction, both in his answer and again in his response to the Bank's motion for

---

[15] See *Dawson Pointe, LLC v. SunTrust Bank*, 312 Ga. App. 338, 339 (718 SE2d 570) (2011), distinguishing on this ground *Garrett* and *Moore*, supra.

[16] (Citation omitted.) Id.

[17] Id.

[18] (Punctuation and footnote omitted.) *Core LaVista, LLC v. Cumming*, 308 Ga. App. 791, 795 (1) (b) (709 SE2d 336) (2011).

summary judgment; thus, Klesko has preserved this issue for adjudication.[19] But the trial court did not address Klesko's defense of lack of personal jurisdiction, either in its orders granting summary judgment to the Bank or otherwise. The trial court's ruling granting summary judgment on the merits of the Bank's claim against Klesko was therefore premature.[20] Because "OCGA § 9-11-56 contemplates a judgment on the merits, and a motion for summary judgment is designed to test the merits of a claim[,] . . . a defense such as lack of personal jurisdiction is generally not a proper subject for summary judgment."[21]

Klesko's liability under his guaranties of the Note and the LOC, as well as his defense of failure of consideration, are matters to be considered by a court having proper jurisdiction of the merits.[22] Thus, the trial court in this case was first required to rule on whether the Bank's complaints against Klesko should be dismissed for lack of personal jurisdiction under OCGA § 9-11-12 (b) (2).[23] Accordingly, we reverse the grant of summary judgment against Klesko in Case Nos. A11A1772 and A11A1797, and remand these cases for consideration of the pending jurisdictional issue.[24] In light of the foregoing, we do not address Klesko's remaining enumerations of error.

5. In Case No. A11A1772, appellant Spear contends that the Bank failed to mitigate its damages, as required by OCGA § 13-6-5,[25] by electing to sue on the LOC and the guaranties instead of pursuing a nonjudicial foreclosure on the real property given as security for the LOC. This issue was addressed in our recent decision of *REL Dev. v. Branch Banking &c. Co.*,[26] which is on all fours with the case before us and which is controlling as to this issue. We decline to revisit this issue.

Appellant further invites us to overturn our Supreme Court's

---

[19] See OCGA § 9-11-12 (b) (2), (h) (1) (B).

[20] See *Hight v. Blankenship*, 199 Ga. App. 744, 745 (406 SE2d 241) (1991) ("Since the . . . jurisdictional issues have not been waived, nor have they been addressed in the lower court, the trial court's ruling on the merits of the case was premature"). Accord *Baiye v. Gober*, 254 Ga. App. 288, 290 (2) (562 SE2d 249) (2002).

[21] (Punctuation and footnotes omitted.) *Scanlan v. Tate Supply Co.*, 303 Ga. App. 9, 10 (a) (692 SE2d 684) (2010), citing *Ogden Equip. Co. v. Talmadge Farms*, 232 Ga. 614, 615 (208 SE2d 459) (1974).

[22] See *Hight*, supra (defendant's statute of limitation defense was matter for consideration by court with proper jurisdiction of merits of case).

[23] See id. Accord *Smith v. Atlantic Mutual Companies*, 283 Ga. App. 349, 351-352 (2) (641 SE2d 586) (2007).

[24] See *Hight*, supra.

[25] OCGA § 13-6-5 ("Where by a breach of contract a party is injured, he is bound to lessen the damages as far as is practicable by the use of ordinary care and diligence").

[26] 305 Ga. App. 429, 431-432 (1) (699 SE2d 779) (2010).

1926 decision in *Reid v. Whisenant*.[27] This we are powerless to do.[28] This enumeration fails.

6. In Case No. A11A1797, Spear contends that an issue of fact exists as to whether his guaranty of the LOC was supported only by past consideration, because the guaranty in question was not dated. It is true that

> [a] promise to pay the pre-existing debt of another, without any detriment or inconvenience to the creditor or any benefit secured to the debtor in consequence of the undertaking, is a mere nudum pactum. . . . Past consideration — one which has already served its purpose in a former transaction [—] will not support a contract of guaranty.[29]

But Spear has not raised a genuine issue of fact as to the consideration for this guaranty. Spear has admitted that he executed the guaranty of the LOC, but he has submitted no evidence that the consideration given for the LOC was only "past" consideration. In particular, he has submitted no evidence, by affidavit or otherwise, that his guaranty of the LOC was executed after the LOC had already been executed. The cases cited by Spear are distinguishable from the case at bar on this ground.[30] This enumeration fails.

7. In Case No. A11A1797, Spear contends that his guaranty of the LOC was limited to the principal amount of $750,000. This contention is without merit.

The guaranty defined the term "Debt" to include: "debts, liabilities, and obligations of the Borrower [Milton LLC] . . . and all extensions, renewals, refinancings and modifications of these debts whether now existing or created or incurred in the future." Under

---

[27] 161 Ga. 503, 510 (131 SE 904) (1926) (rule requiring plaintiff to mitigate damages "is not applicable where there is an absolute promise to pay") (citation omitted).

[28] See *Sumitomo Corp. v. Deal*, 256 Ga. App. 703, 705 (1) (569 SE2d 608) (2002) ("Even if we were convinced that a more enlightened rule should replace the current ancient law, this [C]ourt has no authority to overrule or modify a decision of the Supreme Court of Georgia as the decisions of the Supreme Court of Georgia shall bind all other courts as precedents") (citation and punctuation omitted).

[29] (Citations and punctuation omitted.) *Gwinnett Commercial Bank v. Flake*, 151 Ga. App. 578, 582-583 (8) (260 SE2d 523) (1979).

[30] See, e.g., *Helton v. Jasper Banking Co.*, 311 Ga. App. 363, 365-366 (715 SE2d 765) (2011) (guarantor's affidavit that wrong date had been typed on guaranty and that it had in fact been executed after the note had already been renewed raised fact issue as to whether guaranty was supported by consideration); *Foreman v. Chattooga Intl. Technologies*, 289 Ga. App. 894, 896 (658 SE2d 470) (2008) (conflicting affidavits between debtor and creditor as to failure of consideration precluded grant of summary judgment to either party); *Jackson v. First Bank of Clayton County*, 150 Ga. App. 182, 184 (256 SE2d 923) (1979) (fact that guaranty was executed one day after making and funding of loan was immaterial where loan and guaranty were one transaction).

the guaranty, Spear specifically agreed to guaranty the $750,000 loan set forth in the original LOC executed on December 29, 2006, as well as those amounts incurred from all future extensions, modifications, and renewals of the loan:

> I absolutely and unconditionally agree to all terms of and guaranty to you the payment and performance of each and every Debt . . . that the Borrower . . . may now *or at any time in the future* owe you, including, *but not limited to* the following described Debt(s): Promissory Note in the amount of *$750,000.00* dated *December 29, 2006.* I guaranty the Debt up to the principal amount of *$750,000.00* plus accrued interest, attorney's fees and collection costs, when allowed by law, *and all other amounts agreed to be paid under all agreements evidencing the Debt and securing the payment of the Debt.* You may, without notice, apply this Guaranty to such Debt of the Borrower as you may select from time to time.

(Emphasis supplied.) Thus, the plain language of the guaranty includes amounts beyond the initial $750,000 loan. As the trial court has ruled only on the issue of liability, as discussed in Division 3 above, we affirm the grant of summary judgment in favor of the Bank and against Spear, and we remand for further proceedings proving the damages to be awarded to the Bank and entering judgment in a sum certain.

*Judgment affirmed in Case Nos. A11A1770, A11A1771, A11A1795, and A11A1796, and cases remanded with direction. Judgment affirmed in part and reversed in part in Case Nos. A11A1772 and A11A1797, and cases remanded with direction. Judgment vacated in Case Nos. A11A2005 and A11A2006, and cases remanded with direction. Dillard and Boggs, JJ., concur.*

DECIDED FEBRUARY 23, 2012.

*Schreeder, Wheeler & Flint, David H. Flint, John A. Christy, Jared W. Heald, Philip R. Green, Kalka & Baer, A. Bryan Baer, Mitchell T. Bagwell,* for Shropshire and Milton Organizers, LLC.

*Stone & Baxter, Ward Stone, Jr., Christopher W. Terry, Matthew S. Cathey,* for Klesko and Spear.

*Arnall, Golden & Gregory, Matthew T. Covell,* for Alostar Bank of Commerce.